**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:13-CR-82-CRS**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**v.**

**RAIMUNDO RAMIREZ,** **Defendant.**

## REPORT AND RECOMMENDATION AS TO DEFENDANT RAIMUNDO RAMIREZ'S MOTION TO SUPPRESS CELLULAR PHONE EVIDENCE

This matter is before the Court on a motion to suppress evidence obtained from the search of a cellular phone with assigned number 502-552-7460 ("Motion to Suppress") (DN 122) filed by Defendant Raimundo Ramirez ("Ramirez"). The United States filed a response (DN 155) in opposition to the Motion to Suppress.[1] Ramirez did not file a reply. This matter is now ripe for review. For the following reasons, the undersigned Magistrate Judge recommends that the Court GRANT the Motion to Suppress.

### Background

This case stems from a 2012-2013 drug trafficking investigation and involves charges of conspiracy, possession with the intent to distribute, and distribution of large quantities of marijuana. Ramirez is one of a number of defendants. During the course of the investigation, the Drug Enforcement Administration ("DEA") sought and obtained from this Court several authorizations to intercept communications made over cellular telephones used by certain Defendants in this case. (*See* DN 155.) "During the course of the wiretap interceptions of

---

[1] The United States' response (DN 155) addresses the Motion to Suppress (DN 122). This motion, as well as several other motions to suppress that were filed in this action, has been referred to the undersigned for report and recommendation as to disposition. (DN 183). The undersigned will address the other motions to suppress separately.

telephone number 502-552-7460, Ramirez participated in conversations related to drug trafficking." (*Id.*) DEA agents executed a search warrant at his house, located at 2034 Jaycee Drive, New Albany, Indiana on March 14, 2013, and recovered items often used in furtherance of drug trafficking. (*Id.*) Based on physical evidence obtained from his house and on the intercepted wiretap communications, Ramirez was identified as an active member of the drug trafficking organization under investigation. (*Id.*)

Ramirez was arrested on May 16, 2013, two months after the DEA executed the search warrant at his residence on Jaycee Drive in New Albany. (*Id.*) A cell phone with assigned number 502-552-7460 was in Ramirez's possession at the time of his arrest, and was seized incident to that arrest. (*Id.*) On May 22, 2013, Jefferson County Detective Amber Petter submitted an affidavit in support of a search warrant to search the contents of the seized cellular telephone. (DN 155-Exhibit B.) In Detective Petter's affidavit she states: "[a]ffiant arrested Raimundo Ramirez . . . for Conspiracy with the intent to distribute a schedule 1 Controlled Substance Marijuana United States Code Section 812 in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A)(vii) and in violation of Title 21, United States Code, Section 846. When affiant arrested Raimundo Ramirez [he] was in possession of a Verizon Motorola cell phone, blue and grey in color, with phone number 502-552-7460. Affiant knows through training and field experience that individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victim." (DN 155-Exhibit B.)

In his Motion to Suppress, Ramirez argues that the search warrant was improperly authorized because the affidavit submitted by Detective Petter in support of the search warrant

failed to establish the requisite probable cause required by the Fourth Amendment to the United States Constitution.

## Discussion

### A. Probable Cause

#### 1. Standard

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "To comply with the Fourth Amendment's protections, an affidavit submitted in support of a search warrant must include sufficient information to allow the court to find probable cause to justify the search and seizure." *United States v. Crew*, No. 1:14CR107-1, 2015 U.S. Dist. LEXIS 115781, *12 (Ohio S.D. Aug. 31, 2015) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). The issuing magistrate judge must apply a totality of the circumstances test to the circumstances set forth in the affidavit. *United States v. King*, 227 F.3d 732, 740 (6th Cir. 2000). The task is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (citing *Gates*, 462 U.S. at 238).

The issuing judge must make the probable cause determination based only on the information contained within the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 535 (6th Cir. 2005) (citing *United States v. Hatcher*, 473 F.2d 321, 324 (6th Cir. 1973)). In the context of a search warrant for a cellular phone, the "only probable cause necessary is that the phone itself is being used in connection with an [specific] offense or commonly used by

someone committing the [specific] offense." *United States v. Sims*, 508 Fed. Appx. 452, 460 (6th Cir. 2012). However, a mere conclusory statement that provides the magistrate judge virtually no basis at all for making a judgment regarding probable cause is inadequate. *See Gates*, 462 U.S. at 239.

2. Analysis

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court recognized that "[r]easonable minds frequently may differ on the question whether a particular affidavit establishes probable cause," and concluded that the "preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." *Leon*, 468 U.S. at 914 (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). This great deference to the issuing magistrate, however, is not boundless. *Id.* The reviewing court will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for establishing probable cause. *Id.*

A determination of the sufficiency of the evidence supporting probable cause by the reviewing court is also limited to the information presented in the four corners of the affidavit. *Frazier*, 423 F.3d at 531 (citing *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n.8 (1971)). The Court has closely reviewed the affidavit in question that was presented in support of the warrant to search the contents of the cell phone seized incident to Ramirez's arrest. The affidavit states that Ramirez was arrested for Conspiracy with the intent to distribute marijuana, a Schedule I Controlled Substance, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii), and 21 U.S.C. § 846. (DN 155-Exhibit B.) It further states that when Ramirez was arrested he was in possession of a Verizon Motorola cell phone with phone number 502-

552-7460 and that based on the arresting officer's training and experience, individuals may keep text messages or other electronic information stored in their cell phones which may relate them to the crime and/or co-defendants/victim. (*Id.*)

In *Riley v. California*, the Supreme Court granted certiorari to determine whether the police may search, without a warrant, digital information on a cell phone seized from an individual who has been arrested. 134 S. Ct. 2473, 2480 (2014). *Riley* was a combination of two cases: *People v. Riley*, out of the California Court of Appeals, and *United States v. Wurie*, out of the First Circuit. *People v. Riley*, 2013 Cal. LEXIS 3714 (May 1, 2013); *United States v. Wurie*, 724 F. 3d 255 (1st Cir. 2013). In the first case, Riley was stopped for driving with expired tags which led to his arrest for possession of concealed weapons. *Riley,* 134 S.Ct. at 2480. In the second case, Wurie was arrested after police observed him participate in a drug sale. *Id.* Cell phones were seized from both Riley and Wurie incident to their arrests. *Id.* at 2480–81. In its opinion, the Supreme Court reiterated that even though "an arrestee has diminished privacy interests, [that] does not mean that the Fourth Amendment falls out of the picture entirely." *Id.* at 2488. Due to the nature of a cell phone and the vast amount of information about a person that it holds, a search performed solely because a person is in custody is not acceptable. *Id* at 2488–2491.

In *Riley*, when arguing in favor of a warrantless search of a cell phone seized incident to arrest, the government proposed that the *Gant* standard be imported from the vehicle context, allowing a warrantless search of an arrestee's cell phone whenever it is reasonable to believe that the phone contains evidence of the crime of arrest. *Id.* at 2492. *See Arizona v. Gant*, 556 U.S. 332 (2009). The Supreme Court responded that the *Gant* standard would provide no practical

limit when it comes to cell phone searches because, "[i]n the cell phone context, it is reasonable to expect that incriminating information will be found on a phone regardless of when the crime occurred," and *Gant*, as used in the vehicle context, generally protects against evidence of past crimes. *Id.* at 2492. In rejecting the Government's proposition to use the *Gant* standard with regard to search of the contents of a cell phone incident to arrest, the Supreme Court emphasized that applying the *Gant* standard to cell phones would in effect give "police officers unbridled discretion to rummage at will among a person's private effects." *Id.* (citing *Gant*, 556 U.S. at 345).

The affidavit at issue states that Ramirez, prior to the search warrant request, was arrested for conspiracy with intent to distribute marijuana. However, the affidavit fails to mention any facts or circumstances of the investigation of Ramirez or the facts surrounding his arrest on conspiracy drug-related charges. The affidavit also omits any information regarding the wiretap warrants, evidence obtained in the search of his residence, or the ongoing investigation by the DEA into Ramirez's alleged involvement in a drug trafficking organization. Instead, probable cause for the search rests entirely on the fact that Ramirez was arrested and charged with a crime, and was in possession of a cell phone at the time he was arrested. Pursuant to *Riley*, an arrest alone is insufficient to establish probable cause to search the contents of a cellular phone in possession of the person arrested; law enforcement may not search digital information on a cell phone seized from an individual who has been arrested without a warrant. *Id.* at 2495. Moreover, the warrant requirement necessitates that a neutral magistrate judge, given the *facts* and *circumstances* known by law enforcement, make a determination of probable cause independent of law enforcement's conclusions.

In order to justify a search, the circumstances must indicate why it is probable that evidence of the alleged illegal activity will be found in a particular place. *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *Id.* (citing *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)). A number of courts have found that an affidavit establishes the requisite nexus to search a cell phone "when it describes evidence of criminal activity involving multiple participants and includes evidence of communications and coordination among these multiple participants." *United States v. Gholston*, 993 F. Supp. 2d 704, 720 (E.D. Mich. 2014).

The purported nexus in the affidavit is that based on Detective Petter's three years of training and experience individuals keep text messages or electronically stored information on their cell phone relating them to co-defendants or victims. "While an officer's training and experience may be considered in determining probable cause, it cannot substitute for the evidentiary nexus" showing that evidence of a particular crime will be found in a particular place. *United States v. Schultz*, 14 F.3d 1093, 1097 (6th Cir. 1994). "To find otherwise would be to invite general warrants authorizing searches of any property owned, rented or otherwise used by a criminal suspect." *Id* at 1097. Further, Detective Petter's statement regarding her training and experience lacks any specific reference to the crime of drug trafficking. It generalizes that "an individual" may have information on his or her phone that connects him or her to a crime, co-defendants or victims, rather than specifically connecting Ramirez, the crime with which he was charged, or any known information about communications made using this particular phone.

A criminal charge is a *conclusion* drawn by law enforcement based on information gathered that leads them to believe that a particular person is guilty of a particular crime. That cell phones contain evidence that may connect individuals to a crime is also a conclusion. An affidavit that contains only suspicions, beliefs or conclusions, without providing some underlying factual circumstances, has come to be known as a "bare bones" affidavit." *Id.* (citing *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996)); *see also Laughton*, 409 F.3d at 748. When an affidavit, such as this, so lacks in indicia of probable cause, the issuing judge's action cannot be a mere ratification of the bare conclusions of law enforcement. *Leon*, 468 U.S. at 915. The issuing judge must purport to "perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police." *Id.* at 914.

The Sixth Circuit warned in *Weaver*, "it is imperative that affidavits accurately reflect the facts of the particular situation at hand. The use of generalized boilerplate recitations designed to meet all law enforcement needs for illustrating certain types of criminal conduct engenders the risk that insufficient 'particularized facts' about the case or the suspect will be presented for a magistrate to determine probable cause." *Weaver*, 99 F.3d at 1378. In this case, as the Government argues, there were plenty of facts to establish the requisite probable cause, but none of them was conveyed to the issuing judge in the affidavit.

For the foregoing reasons, the undersigned Magistrate Judge finds that there was insufficient information to establish probable cause within the four corners of the affidavit to issue the search warrant. Because the supporting affidavit was insufficient, the warrant was issued in violation of Ramirez's Fourth Amendment rights. Whether the evidence obtained from the execution of the search warrant should be suppressed is addressed below.

**B. Exclusionary Rule and the Good Faith Exception**

The Government argues that even if the affidavit did not support a finding of probable cause to issue the search warrant, suppression of the evidence is unwarranted because the law enforcement officer's reliance on the search warrant for Ramirez's cellular telephone was in good faith. (DN 155.) "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (citing *Illinois v. Krull*, 480 U.S. 340, 347 (1987)). However, the sole purpose of the exclusionary rule is to deter police misconduct, *see Leon*, 468 U.S. at 916, so where police conduct is "pursued in complete good faith…the deterrence rationale loses much of its force." *Id.* at 918-921. Therefore, even though the Court concludes that Detective Petter's affidavit failed to establish the requisite probable cause to issue a search warrant for Ramirez's cell phone, suppression of the evidence found in this search would be unwarranted unless Detective Petter lacked reasonable grounds for believing that the warrant was properly issued. *United States v. Leon* guides the Court in the determination of whether a search conducted pursuant to an invalid warrant may be saved under the "good-faith exception" on the basis that the officers had other information that was not presented to the issuing magistrate judge, but that would have been sufficient to establish probable cause. *Carpenter*, 360 F. 3d at 593. *See also United States v. Leon*, 468 U.S. 897 (1984).

1. Standard

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in 'objective good faith.'" *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 (2012) (citing *Leon*, 468 U.S. at 922–23). Nonetheless, "the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness." *Id.*

In *Leon*, the Court explained that "in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination" because "it is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Leon*, 468 U.S. at 921. However, the Court identified four specific situations in which an officer's reliance on a subsequently invalidated warrant could not be considered to be objectively reasonable: (1) when the "warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information"; (2) when the issuing magistrate has wholly abandoned his judicial role; (3) when the application for the warrant rests on an "affidavit so lacking in indicia of probable cause" as to render official belief in its existence entirely unreasonable; and, (4) when the "warrant is so facially deficient" that the executing officers cannot reasonably presume it to be valid. *Laughton*, 409 F.3d at 748 (citing *Leon*, 468 U.S. at 923); *see also United States v. Weaver*, 99 F. 3d 1372, 1380 (1996).

The question here is whether the application for the issued search warrant rests on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. If it does, then the good faith exception does not apply and evidence obtained from the execution of the search warrant must be suppressed. The showing required to establish that reliance on a subsequently invalidated warrant was objectively reasonable is less than the showing required to establish probable cause. *See Carpenter*, 360 F.3d at 595–96. "[I]t is entirely possible that an affidavit could be insufficient for probable cause but sufficient for 'good faith' reliance." *United States v. Washington*, 380 F.3d 236, 241 (6th Cir. 2004). However, as the court held in *Laughton*, "the good faith exception to the exclusionary rule does not permit consideration of information known to a police officer, but not included in the affidavit, in determining whether an objectively reasonable officer would have relied on the warrant." *Laughton*, 409 F.3d at 752. *See also United States v. Frazier*, 423 F.3d 526, 534 (6th Cir. 2005). In this case, as in *Laughton*, a determination of good faith reliance is bound by the four corners of the affidavit. *Laughton*, 409 F.3d at 751. An officer cannot demonstrate good faith reliance upon a warrant by later testifying about what information he knew but failed to convey in the supporting affidavit. *Frazier*, 423 F.3d at 535.

2. Analysis

In *Butts v. City of Bowling Green*, the Court stated, "it is unreasonable for [the Detective] not to present all of the facts to the judge so that the judge can make a neutral and independent determination of probable cause." *See Butts v. City of Bowling Green*, 374 F. Supp. 2d 532, 544 (W.D. Ky 2005). Here, as in *Butts*, it is impossible to know what information Detective Petter had prior to requesting the search warrant because none of the facts and circumstances regarding

the investigation into Ramirez and his subsequent arrest are described in the affidavit. Notably, the Government's argument in support of Detective Petter's good faith reliance includes the fact that she had additional information that she did not disclose to the issuing judge in the affidavit.

> Unquestionably, the affiant had additional information available to her that would have bolstered the probable cause in the search warrant affidavit. The search warrant affidavit could have included the fact that Judge Heyburn had previously authorized a wiretap for the very cellular phone Ramirez had in his possession at the time of his arrest. And the fact that Ramirez conducted drug related conversations using this telephone could also have been included.

(DN 155.) But even if Detective Petter had the information about Ramirez as the Government purports, such information cannot be used toward the determination of whether the warrant was executed in good faith. "[T]he test for good faith reliance, because it is an objective one, does not permit consideration of the executing officer's state of mind." *Laughton*, 409 F.3d at 750. Indeed, the Supreme Court in *Leon* expressly rejected such an inquiry, reasoning that "sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources." *Id.* (citing *Leon*, 468 U.S. at 922 n.23 ("We . . . eschew inquiries into the subjective beliefs of law enforcement officers who seize evidence pursuant to a subsequently invalidated warrant.")).

The only exception to this rule comes from the Sixth Circuit's decision in *United States v. Frazier*, in which the court, distinguishing the facts of *Frazier* from *Laughton*, held that a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer *if* that information was *revealed* to the issuing magistrate. *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005). The

Government's response does not argue or allege that Detective Petter conveyed any of the facts and circumstances regarding the Ramirez investigation or arrest that were known to her at the time of the request to the judge who issued the warrant. Based solely on the information in the affidavit, an objectively reasonable officer could not reasonably rely on the issued search warrant in good faith because the affidavit supporting the warrant was wholly lacking in any facts or circumstances by which the issuing judge could make an independent and neutral determination of whether probable cause existed to issue a search warrant.

The undersigned Magistrate Judge finds that the affidavit was insufficient to establish probable cause for the issuance of a warrant to search Ramirez's cellular phone, and under the Supreme Court's guidance from *Leon*, that the good faith exception does not apply to save evidence obtained from its subsequent execution in violation of the Fourth Amendment.

3. Concluding Comments

"The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916. "If exclusion of evidence obtained pursuant to a subsequently invalidated warrant is to have any deterrent effect, therefore, it must alter the behavior of individual law enforcement officers or the policies of their departments." *Id.* at 918. Therefore, suppression of evidence obtained pursuant to a warrant should be ordered "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.* at 918. Penalizing the officer for the magistrate judge's error, rather than the officer's, cannot logically contribute to the deterrence of Fourth Amendment violations. *Id.* at 921. In this case, however, the government has taken the position that the agent requesting the warrant had at her disposal the necessary facts and circumstances to establish probable cause for the judge to

issue the warrant. Notwithstanding this position, the affidavit in support of the warrant did not contain those facts and circumstances. This prevented the issuing judge from being anything other than a rubber stamp for boilerplate generalizations made by law enforcement. *Id.* at 914.

We reiterate the Sixth Circuit's opinion in *Weaver*: "[t]he Fourth Amendment does not require an officer to reinvent the wheel with each search warrant application. Nevertheless, because of the threat of generalization when particular facts are necessary, we remain concerned about boilerplate language in affidavits or search warrants. It takes but a few minutes more for law enforcement authorities to obtain and include sufficient particularized facts so that magistrates may perform their detached function *fully* informed." *Weaver*, 99 F. 3d at 1381 (emphasis added).

For the foregoing reasons, the undersigned Magistrate Judge recommends that the Court **GRANT** Raimundo Ramirez's Motion to Suppress (DN 122) evidence from the search of the content of the cell phone with assigned number 502-552-7460 in its entirety.

**Notice**

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, any party may serve and file specific written objections to these findings and recommendations. *Id.*; Fed. R. Civ. P. 72(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985). A party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections. Fed. R. Civ. P. 72(b)(2).

cc: Counsel of record

**Colin Lindsay, MagistrateJudge**
**United States District Court**



March 4, 2016